# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 2885 | **DATE** | 12/12/2011 |
| **CASE TITLE** | Chicago Import, Inc. vs. American States Insurance Co. | | |

## DOCKET ENTRY TEXT

Cross-motions for sanctions [180] [183] are denied in full. The case is referred back to the assigned magistrate judge.

■ [ For further details see text below.]

Docketing to mail notices.
*Copy to judge/magistrate judge.

## STATEMENT

    Before the court are cross-motions pursuant to Rule 37(b) for discovery sanctions. For the following reasons, the motions are denied and the case is referred back to the magistrate judge for proceedings consistent with this order.

    This case, filed in May 2009, was referred in February 2010 to Magistrate Judge Mason for non-dispositive pretrial and discovery matters. The case is back before the district court because Defendant American States Insurance Company moves for dismissal under Rule 37(b). Plaintiff Chicago Import, Inc. opposes dismissal and moves for discovery sanctions of its own against Defendant.

    This is a case arising from allegations and suspicions of "Chicago lightning." After a May 12, 2007 fire destroyed Plaintiff's warehouse on Knox Avenue in Chicago, Plaintiff sued Defendant under a first-party insurance policy that Defendant issued Plaintiff. Plaintiff claims approximately $5 million in losses from inventory at the Knox warehouse that went up in flames. Defendant denies coverage because, among other things, it contends Plaintiff is lying about and concealing the value of the Knox inventory lost in the fire. Fraud under the insurance policy could preclude coverage. Moreover, investigators surmise, though not uniformly, that the blaze was suspicious; others blame aging electrical wiring.

    Discovery, which began in October 2009, has proceeded with much refereeing by the magistrate judge, who issued a July 12, 2011 opinion summarizing the case history. In short, Defendant initially sought all inventory, tax, and accounting documents. Nine months later Plaintiff allowed Defendant an on-site inspection, but the documents did not concern inventory or tax returns. Four months after that, in November 2010, Plaintiff produced tax returns, but they were combined filings reflecting the values of Plaintiff's two other Chicago-area warehouses, which were unaffected by the fire. By March 2011, Plaintiff produced only bits and pieces of inventory data, and its president filed an affidavit to the effect Plaintiff had produced all it had.

    The next month, on April 26, just four days before fact discovery closed, Plaintiff turned over a comprehensive inventory spreadsheet entitled "Chicago Import Inventory Final Document." Plaintiff tried to

pass this off as a more polished version of documents produced earlier. It was not. It was, in critical ways, new. But it had not appeared on any of the computers or servers Plaintiff produced to Defendant for imaging by a third party, 4Discovery, LLC ("4Discovery"), pursuant to the parties' Electronically Stored Information ("ESI") agreement. The spreadsheet purportedly was created in August 2009, but the computers were inspected in August 2010, suspiciously with no sign of the spreadsheet's origin.

On Defendant's motion, the magistrate judge ordered Plaintiff to make its computers and its employees available, for a second time, for inspection and depositions, in light of the tardy spreadsheet production. Plaintiff was also ordered to make a list of "each piece of computer media used in the course" of business, and identify "the individuals who primarily and/or routinely used each piece of media," including the location of the spreadsheet revelation. 4Discovery was to first provide the data to Plaintiff to create a privilege log, and Plaintiff would then forward the imaging data to Defendant. Defendant's motion for Rule 37(b) dismissal turns, in large part, on what happened next.

First, Defendant's motion is obsessed with "flash drives." A flash drive is usually considered a small storage device that connects to computers through USB ports. They are for shuttling information between machines, not creating documents. Both the 2010 imaging and 2011 re-inspection showed scores of flash drives, external hard drives, and other digital media devices were connected, at some point, to Plaintiff's computers at various warehouses and on employees' home computers. However, Plaintiff repeatedly denied using flash drives in the ordinary course of its business. Defendant extrapolates from this that Plaintiff is not only lying about its use of flash drives in the ordinary course of business, but that Plaintiff is therefore also concealing the smoking inventory gun that would allow Defendant to deny coverage through an exclusion.

While there is some question whether Plaintiff, given the path of this litigation, has acted with a full complement of good faith, Defendant does little better here. The presence of flash drives–as well as the various other devices Defendant haphazardly lumps into its accusations as "flash drives" or "drives" (the latter, in fact, a much bigger category)–does not necessarily show they were used in the ordinary course of Plaintiff's business. Nor does their presence show passive misrepresentation much less affirmative concealment of inventory information. See, e.g., Grubb v. Bd. of Trs. of the Univ. of Ill., 730 F. Supp. 2d 860, 864-65 (N.D. Ill. 2010) (refusing to assume computer wiped of its contents must have contained responsive data). Second, Defendant—which is fond of hyperbole, particularly the repeated but unsupported use of the term "contumnacious disregard"—contends that Plaintiff has violated multiple court orders such that the Federal Rules of Civil Procedure themselves are tarnished. This argument is unavailing, too.

For all Defendant's indignation and bluster in a twenty-two-page brief, Defendant never discusses the Rule 37(b) standard for dismissal under the most relevant Seventh Circuit and Northern District case law. But Plaintiff does, and as Maynard v. Nygren, 332 F.3d 462, 467 (7th Cir. 2003), explains, Rule 37(b) dismissal is "draconian." Maynard concerned late production of a key document on the eve of trial. Id. at 465-66. The district court dismissed the case, but the panel reversed for a failure to find sufficient deliberate misconduct. Id. at 468. Although Maynard required a "clear and convincing" standard, whereas later cases held a preponderance standard was enough, see Negrete v. Nat'l R.R. Passenger Corp., 547 F.3d 721, 723-24 & n.1 (7th Cir. 2008), Defendant fails to meet even the lesser burden. Evidence of willfulness, while present here, is weak, and far less than the preponderance. Defendant fails to develop the argument anyway.

Because Planitiff's conduct does not rise to the level allowing this court to impose Rule 37(b) sanctions, Defendant's motion is denied in full. Plaintiff's cross-motion, which attacks Defendant's extraction and use of metadata without a privilege review, has some merit yet fails to suggest any real prejudice. It is therefore denied. The parties are admonished that the court's view of their discovery conduct is dim. Future missteps may meet harsher results. See, e.g., Negrete, 547 F.3d at 724 (affirming rule 37(b) dismissal because "it is unacceptable to hide evidence").

IT IS SO ORDERED.