CHICAGO IMPORT, INC.,

    Plaintiff,

    v.

AMERICAN STATES INSURANCE COMPANY,

    Defendant.

No. 09 CV 2885

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

A fire broke out at Chicago Import, Inc.'s warehouse, causing damage. Chicago Import asked its insurer, American States Insurance Company, for payment. A lengthy investigation ensued. Eventually Chicago Import sued, alleging that by delaying, and by refusing to pay, American States breached the parties' contract and violated Illinois insurance law prohibiting bad-faith handling of claims. American States contends that it does not have to pay because the fire was deliberately set by Chicago Import (or at least caused by its neglect), and because Chicago Import fraudulently inflated the extent of the damage. American States urges that, at a minimum, its positions on those issues prove that its investigation was not conducted in bad faith. Each party moved for summary judgment on numerous issues. The motions are granted in part and denied in part, as explained below.

**I.    Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). "When the material facts are not in dispute, the existence and interpretation of a contract are questions of law that the court may decide on a motion for summary judgment." *Citadel Group v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 587 (7th Cir. 2012).

## II. Analysis

### A. Exclusion for Neglect

On April 23, 2007, for unknown reasons, a sprinkler head at the warehouse sprayed water, damaging some inventory. PSOF ¶ 1.[1] Chicago Import submitted an insurance claim, which American States paid. DSOF ¶ 16. The spraying sprinkler head was discovered by a Chicago Import employee, who called the alarm company and the Chicago Fire Department. PSOF ¶¶ 4, 6. The Fire Department turned off the water supply and replaced the sprinkler head. PSOF ¶¶ 7–8. After the sprinkler head was replaced, Fire Department employees told the Chicago Import employee

---

[1] The facts are taken from the parties' Local Rule 56.1 statements. "DSOF" refers to American States's statements, with Chicago Import's responses [328]. "PSOF" refers to Chicago Import's statements, with American States's responses [338].

that "everything was okay" with the system. PSOF ¶ 10. But three weeks later, when the fire broke out, the sprinkler system was off. DSOF ¶ 23.

Under the parties' contract, American States is not required to pay for damage caused by Chicago Import's "[n]eglect . . . to use all reasonable means to save and preserve property from further damage at and after the time of loss." DSOF ¶ 72. American States argues that this provision bars coverage because the damage was caused by Chicago Import's failure to turn the sprinkler system back on after the April repairs. [324] at 4. Chicago Import denies that it knew the system was off; it says it left such matters to the Fire Department. [327] at 2, 4.

Chicago Import argues that its duty to protect against "further" damage "at and after the time of loss" has no application to alleged pre-loss neglect, such as failing to turn on the sprinkler system. [327] at 5–6. Chicago Import relies on the Appleman insurance-law treatise and *Tuchman v. Aetna Casualty & Surety Company*, 44 Cal.App.4th 1607, 1616 (2d Dist. 1996), which address the issue in the context of nearly identical insurance provisions. Appleman notes that "[i]t is often required by the policy that loss is not covered when caused 'by neglect of the insured to use all reasonable means to save and preserve the property at and after a fire or when the property is endangered by fire in neighboring premises.'. . . This provision has, of course, no application to negligence of the insured before the origin of the fire. It applies, rather, to situations where no proper diligence was used by the insured at the time of, or following a fire, to save property from destruction." 5 John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 3115 (1970). And

3

*Tuchman* found that the language "at and after the time of loss" led "to one conclusion only"—that pre-loss neglect did not bar coverage. *Tuchman*, 44 Cal.App.4th at 1616.

American States argues that Chicago Import's neglect was *not* pre-loss neglect because it occurred *after* the April sprinkler incident, which also resulted in a loss. [324] at 5; [337] at 3. American States compares this case to *Bass v. Illinois Fair Plan Association*, 98 Ill.App.3d 549 (1st Dist. 1981). In *Bass*, fires occurred in both June and July 1974, and the parties settled the resulting claims. After a third fire broke out in September, the insurer denied coverage, arguing that the insured failed to adequately protect the property "at and after" the June and July losses. *Id.* at 551 & n.1. The jury found for the insurer and the appellate court affirmed because there was sufficient evidence that the insured failed to board up the property after the first two fires. *Id.* at 552. In *Bass*, the first and second losses resulted from the same type of harm; the jury was entitled to find that a reasonable insured would have protected the property from further such harm. In contrast, in this case, the losses resulted from entirely different types of harms—water and fire. If a wayward sprinkler head requires an insured to take all reasonable measures to protect against a later fire, the distinction between pre- and post-loss neglect is meaningless—once an insured makes a single claim the distinction is forever lost, regardless of the timing of, or dissimilarity between, the losses.[2] *Bass* is not that

---

[2] On the issue of dissimilarity, the present case is notable. It would have been neglect *not* to turn off the sprinkler system while investigating and fixing the wayward sprinkler head; but American States argues that that very action is part of Chicago Import's "neglect" in the context of the fire.

4

broad. American States's complaints are about pre-loss neglect, which does not bar coverage. Accordingly, Chicago Import's motion for summary judgment on this issue is granted.[3]

## B. Exclusion for Fraud

Under the parties' contract, American States is not required to pay "in any case of fraud, intentional concealment or misrepresentation of a material fact" by Chicago Import. DSOF ¶ 72. American States moves for summary judgment, arguing that Chicago Import misrepresented: (1) the total inventory owned by Chicago Import at the time of the fire; (2) the value of certain specific items; and (3) Chicago Import's practices concerning inventory tracking. [324] at 13. Chicago Import cross-moves for summary judgment, arguing that American States adduced no evidence to support its fraud defense. [327] at 14.

"Ordinarily, the existence of fraud is a question of fact to be determined by the jury, or by a trial court sitting without a jury." *Gregory's Cont'l Coiffures & Boutique, Inc. v. St. Paul Fire & Marine Ins. Co.*, 536 F.2d 1187, 1192 (7th Cir. 1976). The cases cited by American States deviated from this ordinary rule, but under circumstances quite different from those here. For example, in *Passero v. Allstate Insurance Company*, 196 Ill.App.3d 602 (1st Dist. 1990), the insureds made

---

[3] Even if the exclusion applied, whether Chicago Import was neglectful turns on genuinely disputed facts, including whether any Chicago Import employee knew or reasonably should have known that the sprinkler system was off. *See* DSOF ¶¶ 24–25; PSOF ¶¶ 9, 11–14, 16. Furthermore, Chicago Import's neglect would bar its recovery only to the extent that the damage would have been less had the system been on. *See Henri's Food Prods. Co. v. Home Ins. Co.*, 474 F.Supp.889, 892 (E.D. Wis. 1979). That extent is not established by the undisputed facts.

5

the following statements under oath: (1) their stereo was purchased for $962.95; (2) the receipt they submitted to the insurance company for the stereo was the original; (3) they received no employee discount when purchasing the stereo; (4) they owned video equipment worth $1,500; and (5) the receipt they submitted for the video equipment was the original. *Id*. at 604–05. Those were lies. The insureds received an employee discount on the stereo, so they paid less than half what they had claimed; they never purchased video equipment; and they forged both receipts. *Id*. at 605. They "neither attempt[ed] to deny nor to explain their misrepresentations." *Id*. at 606. Although materiality is "ordinarily a jury question," under these exceptional circumstances, the court found materiality as a matter of law. *Id*. at 610–11.

*Tenore v. American & Foreign Insurance Company*, 256 F.2d 791 (7th Cir. 1958), also cited by American States, is similar. The court conducted a bench trial and the facts showed a drastic difference between the actual value of the insured merchandise (guns) and what the insured had claimed. *Id*. at 793. And the insured's valuation was facially fraudulent: "Although many of the guns were in the junk class with missing parts, cracked stocks, sawed-off barrels, and practically all were more than fifty years old, [the insured] swore in his testimony and in the proofs of loss that they were each worth $60.60, the catalog wholesale value of a new gun. This was intentional false swearing as a matter of law." *Id*. at 793. Again, the exceptional circumstances permitted deviation from the rule that "[o]rdinarily the

6

question of fraud is a question of fact to be determined by a jury or by the trial court if sitting without a jury." *Id.*[4]

The *Tenore* court wrote that the outcome may have been different if the insured's dishonesty concerned only a portion of the merchandise. *Id.* at 794. On that ground, the Seventh Circuit distinguished *Tenore* in a case in which the alleged misrepresentation concerned just $900 out of a claim for nearly $32,000:

> The finding of this court in *Tenore* that the plaintiffs there "knowingly and wilfully made false statements with regard to a material matter with an intent to defraud," was based on the fact that the plaintiffs grossly overvalued practically all of the items. The court conceded that if the plaintiffs had overvalued a smaller number of items, "and had displayed some effort to make an honest valuation as to the other items," the result would have been different. In the case at bar, the apportionment of the subsidiary's loss to L & S was of a negligible amount in comparison with the amount of the total claim. This statement of fact does not prove wilful misrepresentation.

*L & S Enters. Co. v. Great Am. Ins. Co.*, 454 F.2d 457, 460 (7th Cir. 1971) (internal marks and citations omitted); *see also Fitzgerald v. MFA Mut. Ins. Co.*, 134 Ill.App.3d 1007, 1010 (5th Dist. 1985) ("[M]ateriality . . . is a question of fact for the jury. . . . If some effort is displayed at making an honest valuation of a loss, the court should not find fraud or misrepresentation as a matter of law but should submit the question to the jury.") (internal citations omitted).

---

[4] *Lykos v. American Home Assurance Company*, 452 F.Supp. 533 (N.D. Ill. 1978), also cited by American States, is similar. The case was tried and the evidence clearly demonstrated material misrepresentation: "In one instance plaintiff[s] included a claim for a clock on which they placed a value of $2,000. Upon trial the only clock that plaintiff[s] could show was damaged was a clock costing $200. Plaintiffs also included in their claims all their tables, chairs and dining room equipment. Pictures of the dining room introduced into evidence showed most of the tables and chairs intact after the fire." *Id.* at 535. Given the circumstances, while acknowledging that fraud is ordinarily a question for the jury, the court was able to rule as a matter of law (on a post-trial motion). *Id.* at 536.

The circumstances here are far from those in *Passero* and *Tenore*. Chicago Import maintains that its valuation of the inventory was true and accurate, and it cites the opinions of two experts. [327] at 10. American States has not shown, as a matter of law, that Chicago Import's number was inflated. Instead, American States observes that its own expert was not able to arrive at the same number, using a different method, based on Chicago Import's records. Thus, it argues, Chicago Import must have either: (i) inflated its claim; or (ii) made some (unspecified) misrepresentation in or concerning the records on which American States's expert's opinion was based. [324] at 10; [337] at 5. American States has not identified the misrepresentation in or concerning the records. It does not point to a false entry, or a statement by Chicago Import that the application of a certain method of accounting to the records would result in a particular value for the claim. In short, American States has not shown, as a matter of law, that Chicago Import made a material misrepresentation concerning either the total value of the inventory it owned at the warehouse or the records it turned over.

That doesn't mean, however, that Chicago Import is entitled to summary judgment. The parties' experts disagree dramatically on the value of the inventory that Chicago Import owned at the time of the fire. One source of the disagreement is that the parties disagree sharply about whether Chicago Import actually owned the items that were in the warehouse. PSOF ¶¶ 52, 54. Whether Chicago Import in fact owned the items cannot be resolved on the undisputed facts. A jury could find that

Chicago Import did not own the items, and that it submitted a claim based on the value of items it knew it did not own.

Similarly, whether Chicago Import's statements about the value of certain video tapes constitute material misrepresentations cannot be determined at the summary judgment stage. American States argues that Chicago Import "routinely" paid only $0.50 per tape, but asked for $1.00 per tape in its claim. [324] at 11. But Chicago Import submitted evidence that it sometimes paid up to $2.00 for tapes. DSOF ¶¶ 66–68; [325-39] at 48–50.[5] The evidence does not show, as a matter of law, that Chicago Import's valuation was false. And even if Chicago Import's valuation was incorrect, under *L & S Enterprises*, that fact alone does not constitute a material misrepresentation as a matter of law. *See* 454 F.2d at 460.

Regarding Chicago Import's inventory tracking, American States argues that Chicago Import's owner "testified under oath that Chicago Import took yearly inventories," and that this testimony was a material misrepresentation. [324] at 14. There are two problems with that argument. First, both the testimony and the supposedly contradictory evidence are imprecise. The full extent of the testimony is the following question and answer:

> Q: How often, sir, do you conduct a physical inventory at your locations?
>
> A: We do mostly like end of year, like in January.

---

[5] Chicago Import's response to DSOF ¶ 66 references "Exhibit Q" but it appears that the reference should have been to "Exhibit AA."

DSOF ¶ 54; [325-11] at 146:13–16. The supposedly contradictory evidence is equally vague. DSOF ¶¶ 51–55, 60; [325-30] at 22:7–24:8; [333-3] at 96:24–98:20. The owner's later affidavit states that Chicago Import "did not maintain a strict schedule as to when and how inventories were performed." DSOF ¶ 60. The affidavit is not inconsistent with the deposition—certainly not to the extent that one can be found to be a misrepresentation as a matter of law. "Mostly" doing inventories in January is consistent with not having a strict schedule. The second problem with American States's argument is that American States has not suggested how any misrepresentation about inventory tracking was material. Materiality is required.

Accordingly, as to fraud, the parties' motions are denied.

C.   **Exclusion for Arson**

American States argues that it is not obligated to pay Chicago Import's claim because Chicago Import deliberately set the fire. [324] at 18. If that was undisputed, or indisputable, American States would be entitled to summary judgment. DSOF ¶ 72 (policy excludes damages caused by Chicago Import's criminal acts). Not surprisingly, the issue is disputed. [327] at 14. Chicago Import cross-moved for summary judgment, arguing that American States relies on nothing but speculation for this defense. [327] at 19.

To succeed on its arson defense, American States must prove that Chicago Import caused the fire and the fire was "of an incendiary nature." *Moore v. Farmers Ins. Exchange*, 111 Ill.App.3d 401, 408 (2d Dist. 1982). Evidence that Chicago Import had a motive and opportunity to set the fire can support an inference that it

did so. *Id*. at 409–10. On motive and opportunity, American States notes the following: not long before the fire, Chicago Import increased its policy limit from $2 million to $5 million; Chicago Import had experience making claims for fire damage; and several employees were present when the fire started (and the owner was only five minutes away). [324] at 15–16. Chicago Import responds that it was "extremely profitable" and that it had $100,000 of merchandise delivered to the warehouse on the day of the fire—facts that it contends are inconsistent with a conclusion that it deliberately set the fire. [327] at 18; PSOF ¶¶ 57, 87. Chicago Import suggests that independent electricians were responsible. It notes that electrical problems caused a loud explosion and required repairs, and the fire began shortly after Commonwealth Edison employees performed those repairs. [327] at 14–15; PSOF ¶¶ 39–44. The evidence does not irrefutably prove that Chicago Import caused the fire; nor does it compel the opposite conclusion. The evidence on each side is sufficient to send the inquiry to the jury.

American States argues that there is "no real dispute that the fire at the warehouse was incendiary in nature." [324] at 15. In support, it cites the report of a Bureau of Alcohol, Tobacco, Firearms and Explosives agent. *Id*. Chicago Import says there *is* a dispute, and points to conclusions from (i) a fire investigator hired by American States; (ii) a fire investigator from the Chicago Fire Department, and (iii) an arson detective from the Chicago Police Department. [327] at 15–16. Although American States questions the weight of the evidence cited by Chicago

11

Import ([337] at 10), weighing the evidence is a job for the jury, not the court at summary judgment.

American States argued that its arson defense could be decided as a matter of law, but it cited no case in support. [324] at 14. The four cases it cited all sent the issue to the jury.[6] One case it cited, *Morris v. Auto-Owners Insurance Company*, 239 Ill.App.3d 500 (4th Dist. 1993), is particularly instructive. In *Morris*, four out of five investigators concluded that the fire was of incendiary nature, and the fifth concluded that it was "suspicious in origin" and "more intentionally set than accidentally set." *Id.* at 503–04. The door to the building was found unlocked, and one of the insureds—who had keys—was no more than a block away when the fire started. *Id.* at 504. The other insured kept changing his alibi and took two polygraph tests, which both showed signs of "purposeful noncooperation." *Id.* at 504–05. Finally, their business was doing poorly, so they stood to benefit financially from the fire. *Id.* at 506. Given the totality of the evidence, the insurer was entitled to judgment as a matter of law that its delay in settling the claim was not vexatious or unreasonable. *Id.* at 509. Nonetheless, the question of whether the insureds actually committed arson, voiding their policy, went to the jury. The jury found that they did not, so the insurer paid the claim. *Id.* at 502. The same pattern occurred in *Lummis v. State Farm Fire & Casualty Company*, 469 F.3d 1098 (7th Cir. 2006) (Indiana law). In *Lummis*, the insured's claim of bad-faith delay was denied at

---

[6] *See Dough, Inc. v. Badger Mut. Ins. Co.*, 1997 U.S. Dist. LEXIS 16676 (N.D. Ill. 1997); *Fittje v. Calhoun County Mut. County Fire Ins. Co.*, 195 Ill.App.3d 340 (4th Dist. 1990); *Moore*, 111 Ill.App.3d 401; and *Morris v. Auto-Owners Ins. Co.*, 239 Ill.App.3d 500 (4th Dist. 1993).

12

summary judgment due to evidence of arson, but the ultimate question of arson went to the jury, which found for the insureds. On the persuasive strength of these cases, and due to the genuine dispute of fact, I deny both parties' motions for summary judgment concerning arson.

### D. Good-faith Investigation

Because American States has adduced sufficient evidence to go to the jury on its defenses of fraud and arson, it is entitled to summary judgment that it did not investigate Chicago Import's claim in bad faith. *Morris*, 239 Ill.App.3d at 506 (judgment as a matter of law warranted if insurer "reasonably relied upon evidence sufficient to form a *bona fide* dispute."); *State Farm Mut. Auto. Ins. Co. v. Smith*, 197 Ill.2d 369, 380 (2001).

## III. Conclusion

For the foregoing reasons, each party's motion for summary judgment is granted in part and denied in part. Summary judgment is granted for Chicago Import on American States's sixth affirmative defense (insured's neglect). Summary judgment is granted for American States on Count III of Chicago Import's complaint (bad-faith delay). In all other respects, the motions [323] and [327] are denied.

ENTER:

/s/ Manish S. Shah

———————————————
Manish S. Shah
United States District Judge

Date: 5/8/15

13