CHICAGO IMPORT, INC.,

      Plaintiff,

   v.

AMERICAN STATES INSURANCE
COMPANY,

      Defendant.

No. 09 CV 2885

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

A jury returned a verdict of $5 million in favor of Chicago Import, Inc. on its claim that American States Insurance Company failed to reimburse Chicago Import for merchandise destroyed in a warehouse fire. Judgment was entered shortly after the jury verdict. [396]; [398].[1] Chicago Import moves to amend or correct the judgment to include an award of prejudgment interest. [413]. American States moves for judgment notwithstanding the verdict, a new trial, or remittitur. [417]. For the following reasons, both motions are denied.

## I.    Background

This is a breach of contract case arising out of an insurance claim for merchandise lost in a warehouse fire.[2] American States Insurance Co. issued a commercial property insurance policy to Chicago Import, Inc., a company that

---

[1] Bracketed numbers refer to district court docket entries.

[2] Subject-matter jurisdiction exists because Chicago Import is a citizen of Illinois, American States is a citizen of Washington and Indiana, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. The parties agree that Illinois law applies.

bought and re-sold various types of merchandise. Chicago Import occupied a warehouse located at 4150 N. Knox Avenue in Chicago.

In late April 2007, a sprinkler head broke and water damaged some merchandise in the Knox warehouse. Chicago Import submitted a claim to American States for that loss, which is not at issue. The Chicago Fire Department turned off the warehouse sprinkler system to repair the sprinkler head. The system was never turned back on. A fire occurred at the warehouse on May 12, 2007, destroying the building and Chicago Import's merchandise stored inside. The day of the fire, and shortly before it occurred, ComEd employees replaced a blown fuse at the warehouse.

Chicago Import submitted a claim to American States for its full policy limit for the lost warehouse merchandise, which was $5 million. American States did not pay the claim, and Chicago Import sued within two years of the fire (as required under the policy), bringing claims for declaratory judgment, breach of contract, and bad faith under 215 ILCS 5/155. [1]. American States denied liability, contending that Chicago Import breached its duty to cooperate, that Chicago Import misrepresented material information regarding its claim, and that the fire was caused by neglect or was intentionally set. [13].

Discovery continued for several years, and in 2014, the parties filed cross-motions for summary judgment. [323]; [327]. Because the policy's negligence exclusion applied only to post-loss negligence, which was not at issue here, Chicago Import was granted summary judgment on American States's defense to coverage

based on pre-loss neglect. [341] at 2–5. American States was granted summary judgment on Chicago Import's Section 155 bad faith claim because there was sufficient evidence to go to the jury on the defenses of fraud and arson, which meant that American States did not act in bad faith. [341] at 13. The cross-motions were denied in all other respects. After a trial, the jury returned a $5 million verdict in favor of Chicago Import and against American States. [396]; [397].

## II.    Chicago Import's Motion for Prejudgment Interest

After judgment was entered on the jury verdict, Chicago Import moved under Rule 59(e) to amend or correct the judgment to include an award of prejudgment interest. [413]. American States opposes the motion, arguing that prejudgment interest must be requested prior to entry of judgment and that Chicago Import does not meet the standards for an award of prejudgment interest under Illinois law.

### A.    Timeliness

Federal Rule of Civil Procedure 59(e) permits a court to alter or amend a judgment, upon a parties' motion within 28 days of entry of judgment. Courts may grant Rule 59(e) motions to alter or amend the judgment if the movant "presents newly discovered evidence that was not available at the time of trial" or "points to evidence in the record that clearly establishes a manifest error of law or fact." *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012). But Rule 59(e) does not allow parties "to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier." *Id*. Since prejudgment interest is "encompassed within the merits

of the underlying action," it falls within a court's discretion on a Rule 59(e) motion. *Id.* at 814.

Although an award of prejudgment interest "*may* be a proper subject for a Rule 59(e) motion, so long as the requirements of Rule 59(e) have been complied with," *First State Bank of Monticello v. Ohio Cas. Ins. Co.*, 555 F.3d 564, 572 (7th Cir. 2009) (marks omitted), that does not mean that an award of prejudgment interest *should* be made after the entry of judgment. *See, e.g., Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 410 (7th Cir. 1999) ("Here, the Plaintiffs should have requested the prejudgment interest *prior* to judgment, but they did not.). Typically, in cases where a Rule 59(e) motion for prejudgment interest has been denied as untimely, the plaintiff never requested such relief in their pleadings or the plaintiff had the opportunity to develop that argument at summary judgment but failed to do so. *See, e.g., First State Bank*, 555 F.3d at 572; *Uphoff*, 176 F.3d at 410.

Here, in contrast, Chicago Import requested prejudgment interest in its complaint ([1] ¶¶ 30(4), 32) and again in the proposed pretrial order ([374] at 12). American States argues that the motion should have been brought earlier, but there would have been little point in briefing the issue prior to the jury verdict. "While arguments presented for the first time in a Rule 59(e) motion ordinarily are deemed forfeited, the grant or denial of prejudgment interest is an exception to this general rule" because "elsewise parties would be required to put the cart before the horse and argue about prejudgment interest before the underlying issues of liability and damages have been resolved." *In re Redondo Constr. Corp.*, 678 F.3d 115, 122 (1st

Cir. 2012) (citations omitted). For example, in *Osterneck v. Ernst & Whinney*, 489 U.S. 169 (1989), the plaintiffs orally moved for prejudgment interest immediately after the jury verdict was announced, but the district court directed the parties to submit written briefs, stating that the judgment would be amended if prejudgment interest were granted. *Id.* at 171–72. Concluding that "a postjudgment motion for discretionary prejudgment interest constitutes a motion to alter or amend the judgment under Rule 59(e)," *id.* at 175, the Supreme Court expressed no disapproval of this procedure, instead holding that "a postjudgment motion for discretionary prejudgment interest involves the kind of reconsideration of matters encompassed within the merits of a judgment to which Rule 59(e) was intended to apply." *Id.* at 176. Similarly, in *Miller v. Safeco Insurance Co. of America*, 683 F.3d 805 (7th Cir. 2012), the district court was entitled to grant the plaintiffs' Rule 59(e) motion to fix an error in their summary judgment prejudgment interest calculation. Although the revised calculation was an argument that the plaintiffs *could* have made earlier, the district court was within its discretion finding that "this was not an argument the [plaintiffs] *had to make* earlier." *Id.* at 815. American States has been on notice since the complaint that Chicago Import was seeking prejudgment interest, and was reminded again when the proposed pretrial order was filed. There was little opportunity to develop these arguments prior to the jury verdict, and therefore, Chicago Import's Rule 59(e) motion timely raises the issue.

## B. Statutory Prejudgment Interest

"In diversity cases governed by *Erie*, federal courts look to state law to determine the availability of (and rules for computing) prejudgment interest."

*Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 106 F.3d 1388, 1405 (7th Cir.1997). Under Illinois law, "[p]rejudgment interest is recoverable only where authorized by agreement of the parties or by statute." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill.2d 218, 255 (2006). Section 2 of the Illinois Interest Act, 815 ILCS 205/2, permits recovery of prejudgment interest for all moneys due on any "instrument of writing," including insurance policies. *Certain Underwriters at Lloyd's, London v. Abbott Labs.*, 2014 IL App (1st) 132020, ¶ 71 (citing *Marcheschi v. Ill. Farmers Ins. Co.,* 298 Ill.App.3d 306, 314 (1st Dist. 1998)). While a good-faith dispute does not preclude recovery of prejudgment interest, *Marcheschi,* 298 Ill.App.3d at 314, "[i]n order to recover prejudgment interest, the amount due must be liquidated or subject to an easy determination." *Certain Underwriters*, 2014 IL App (1st) 132020, ¶ 71 (quoting *Santa's Best Craft, L.L.C. v. Zurich Am. Ins. Co.,* 408 Ill.App.3d 173, 191 (1st Dist. 2010)). "[I]f judgment, discretion, or opinion, as distinguished from calculation or computation is required to determine the amount of the claim, it is unliquidated." *Id.* (quoting *Dallis v. Don Cunningham & Assocs.,* 11 F.3d 713, 719 (7th Cir. 1993)). "Whether to award prejudgment interest is a matter within the sound discretion of the trial court, and its decision will not be reversed absent an abuse of discretion." *Marcheschi*, 298 Ill.App.3d at 313.

Here, the amount of inventory lost by Chicago Import in the warehouse fire was not "liquidated or subject to an easy determination." *See Certain Underwriters*, 2014 IL App (1st) 132020, ¶ 71. The evidence at trial showed that the fire totally engulfed the large warehouse, destroying merchandise and physical inventory

records. Nearly half of the testimony presented over the course of the six-day trial related to ascertaining the amount of Chicago Import's merchandise lost in the fire. Because of the way its records were maintained, Chicago Import did not have an inventory or valuation of its loss ready at hand. Instead, after the fire occurred, Chicago Import's public adjuster and a salvage company hired by American States worked together for many weeks to value the merchandise in the warehouse. Working section by section, seven days a week, and using bobcats to sift through the charred and water-logged debris, they attempted to identify destroyed goods and match them with invoices listing quantifies and prices, estimating the value of the merchandise by assigning a value to each cubic foot based on goods stored in that location. At trial, Chicago Import's public adjuster valued the lost merchandise at over $6 million, and American States's salvager valued the merchandise at $5 million.

These numbers, however, represented their opinions estimating the value of Chicago Import's lost merchandise. *See, e.g.,* [424] at 6 ("Schoeneman was of the opinion that the value of the Chicago Import's merchandise damaged in the fire was in excess of $5million [sic]," and "American States' valuation expert, Jack Garvin, also rendered an opinion that the value of Chicago Import's merchandise damaged in the fire was in excess of $5 million."). This is the kind of judgment or opinion that distinguishes an unliquidated claim from a liquidated one. *See Certain Underwriters*, 2014 IL App (1st) 132020, ¶ 71. American States also presented the expert testimony of a forensic accountant, who did a roll-forward calculation based

on sales records and tax returns and valued the lost warehouse merchandise at $1.5 million. Other witnesses also testified to matters relating to Chicago Import's inventories and the value of its goods, including Chicago Import's owner, some of its employees, and American States's adjuster. Even if the jury ultimately sided with Chicago Import's valuation of its policy-limit loss, the amount of Chicago Import's loss was not readily ascertainable because the valuation required extensive computation and was based on estimations and opinions. *See, e.g., Certain Underwriters*, 2014 IL App (1st) 132020 ¶¶ 70–72.

Chicago Import cites *Residential Marketing Group, Inc. v. Granite Investment Group*, 933 F.2d 546 (7th Cir. 1991), for the proposition that prejudgment interest can be awarded even if the plaintiff does not uncover the exact amount due until discovery, but that case is significantly different. The contract at issue in *Residential Marketing* involved a formula, which required information that was only in the defendant's possession. If the plaintiff had that information, it could have calculated the exact contract damages, and the defendant always had a "perfect" idea of the amount at issue. *Id*. at 549–50. *Residential Marketing* noted that "'[e]asy and exact computation' is the favored catch phrase," *id*. at 549, but the estimates and opinions required to value Chicago Import's losses were neither easy, nor exact. *Chamberlain Manufacturing Corp. v. Maremont Corp.*, No. 92-C-0356, 1995 WL 769782, (N.D. Ill. Dec. 29, 1995), also cited by Chicago Import, is similarly inapposite. Determining understated workers' compensation liabilities, which were always calculable by the defendant, *id*. at *2, is different than the extensive

undertaking required to value Chicago Import's loss, which involved opinion and not mere computation, and which was the subject of competing expert testimony at trial. *See Certain Underwriters*, 2014 IL App (1st) 132020 ¶¶ 70–72. Under these circumstances, Chicago Import is not entitled to a statutory award of prejudgment interest.

### C.    Equitable Prejudgment Interest

In the alternative, Chicago Import requests prejudgment interest pursuant to the equitable powers of the court. While prejudgment interest is generally not allowed absent a statue or agreement between the parties, "[a]n exception to this rule exists in equity." *Tri-G*, 222 Ill.2d at 257. Specifically, "[i]n *chancery proceedings*, the allowance of interest lies within the sound discretion of the judge and is allowed where warranted by equitable considerations and disallowed if such an award would not comport with justice and equity." *Id.* (quoting *City of Springfield v. Allphin*, 82 Ill.2d 571, 579 (1980)). This means that claims sounding in equity may be entitled to prejudgment interest based on equitable considerations, but that "Illinois courts have declined to apply the rule governing equitable awards of prejudgment interest to cases at law, notwithstanding that an injured party who is eventually compensated may suffer detriment from the inability to use the money from the date of loss to the date of compensation." *Id.* at 258 (quoting *Continental Cas. Co. v. Commonwealth Edison Co.*, 286 Ill.App.3d 572, 579 (1st Dist. 1997)).

Summary judgment was granted to American States on Chicago Import's bad faith claim under 215 ILCS 5/155, [341], leaving for trial only Chicago Import's claim for breach of contract—a "classic action at law," for which an equitable award

of prejudgment interest is not available.[3] *First Nat'l Bank of LaGrange v. Lowrey*, 375 Ill.App.3d 181, 217 (1st Dist. 2007); *Continental Cas. Co. v. Commonwealth Edison Co.*, 286 Ill.App.3d at 581; *Tri-G*, 222 Ill.2d at 258 (agreeing that "our state does not allow nonstatutory prejudgment interest on any type of claim at law"). Because it brought an action at law, Chicago Import is not entitled to an equitable award of prejudgment interest under Illinois law.

## III. American States's Post-Trial Motions

### A. Motion for New Trial

Federal Rule of Civil Procedure 59 permits granting a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "A new trial may be granted if the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." *Whitehead v. Bond*, 680 F.3d 919, 927 (7th Cir. 2012). A new trial should be granted, however, "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned." *Id*. at 928. Harmless errors do not require a new trial, instead "[a] new trial is warranted only if the error has a substantial and injurious effect or influence on the determination of a jury, and the result is inconsistent with substantial justice." *Id*. at 930.

---

[3] Chicago Import also had a claim for declaratory judgment, but declaratory judgments are "neither legal nor equitable"—instead the nature of the underlying claim determines whether the action is legal or equitable. *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 649 (7th Cir. 2002) (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 284 (1988)).

American States does not argue that the jury's verdict was against the manifest weight of the evidence, but instead lists perceived evidentiary errors. These evidentiary decisions did not deny American States a fair trial, and so a new trial is not warranted.

1. *Admitting Testimony from Dennis Dyl*

American States presented expert testimony from Sam Sudler, an electrical engineer, who opined that the warehouse fire was not caused by the building's electrical system. In rebuttal, Chicago Import offered expert testimony from electrical engineer Dennis Dyl critiquing the quality of the data relied on by Sudler and Sudler's conclusion that the electrical system could be definitively ruled out as a cause of the fire.

American States moved in limine to bar Dyl's testimony, arguing that his opinions were speculative because he never personally inspected the scene of the warehouse or any of the physical evidence. [373] at 4–13. There was no objection as to Dyl's qualifications, and his methodology was sufficiently reliable for him to present expert testimony to the jury. In his limited role as a rebuttal expert critiquing Sudler's analysis, Dyl had a reliable method of evaluating an electrical investigation through his education, training, and experience in fire investigations and forensic examinations of electrical devices, and his opinions were based not on speculation but on his review of Sudler's materials, the investigation reports from ATF and the Chicago Fire Department, the report by American States's independent investigator, and the depositions of the ComEd employees at the scene

of the fire. The motion in limine was denied, and American States's trial objection to Dyl's testimony was overruled.

Largely repeating its pretrial arguments to the effect that Dyl's opinions were speculative because he did not physically inspect the fire scene or talk to those who did, American States contends that it was error to admit Dyl's testimony. "A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). Instead, "[i]f the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Id*. (quoting *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 596 (1993)). Based on his education, experience, and review of the materials relied upon by Sudler, Dyl's methodology met the *Daubert* threshold and were not based on speculation. American States had an opportunity to cross-examine Dyl, present contrary evidence, and argue the persuasiveness of competing expert testimony. Whether it would have been better for Dyl to examine evidence firsthand rather than review the materials secondhand was an issue that went to the weight and credibility of his testimony. *See Wipf v. Kowalski*, 519 F.3d 380, 385 (7th Cir. 2008).

Dyl also testified that a week before trial, he had physically examined some electrical artifacts removed from the scene of the fire. After Dyl was off the stand, American States moved to strike his testimony because that pretrial examination

had never been disclosed. The motion to strike was denied because Dyl testified that the physical examination did not alter any of his opinions, and Dyl's ultimate opinion that the electrical system could not be ruled out as a cause of the fire had long been disclosed to American States, so there was no prejudice.

American States argues that this was error because it did not have an opportunity to address Dyl's "new" opinions—for example, by presenting contrary evidence from Sudler's examination of electrical artifacts. But while Dyl's physical examination had not been disclosed, Dyl's opinions *were* disclosed—his opinions did not change as a result of the physical inspection. Moreover, American States *had* the opportunity to address Dyl's physical inspection by cross-examining him on the subject and to argue the weight of his testimony to the jury. American States did not ask to reopen its case and bring Sudler back to respond to Dyl's inspection, and it offers no argument now to explain how the verdict would have been different if the jury never heard that Dyl looked at the items. There was no prejudice from this small portion of Dyl's testimony.

And there was no prejudice from admitting Dyl's testimony in its entirety. Without Dyl's testimony that the electrical system could not be ruled out as a cause of the fire, there was ample evidence from which the jury could conclude that the fire was not intentionally set. For example, the jury was not required to credit Sudler's opinion that the electrical system was definitively ruled out as a cause of the fire. There was also testimony from a ComEd employee on scene that the fire broke out within minutes of their replacement of the blown fuse. The jury may also

have credited the testimony of Eddie Punjabi, Chicago Import's owner and president, who testified that he did not cause the fire or cause anyone to do so, and other testimony indicating a lack of motive (e.g., Punjabi testified that after the fire, he took out a $2 million loan to keep the business afloat, using his personal home and a building owned by Chicago Import as collateral).

## 2. *Barring Testimony on Chinese Currency and Oil Prices*

Steve Reed, American States's forensic accountant expert, testified that he did not credit Chicago Import's calculation of the cost of goods sold in 2006 and 2007. American States attempted to elicit that one reason Reed believed it was incorrect was because Chinese currency exchange rates and oil prices did not support Chicago Import's calculation of the cost of goods. Chicago Import objected that this was an undisclosed opinion, and American States responded that Chinese currency rates and oil prices were disclosed in a schedule attached to Reed's report and that these were historical facts, not opinions, of which the court could take judicial notice. The objection was sustained because American States had not sought judicial notice of these facts in advance of trial, Reed had not disclosed an opinion based on Chinese currency and oil prices, and he had not been presented as expert presenting historical facts. Reed, however, was allowed to explain his opinion that he did not credit Chicago Import's explanation of the cost of goods sold for other (disclosed) reasons. The night before closing arguments, American States requested judicial notice of Chinese currency and oil prices. [394]. The motion was denied.

American States does not argue that the court erred in denying its motion for judicial notice, but contends that it erred in excluding Reed's testimony on Chinese

currency and oil prices because it was not a new opinion and was part of his analysis regarding the cost of goods sold. To this day, however, American States has never identified where Reed disclosed—either in his expert report or deposition—an opinion, analysis, or schedule relating Chinese currency and oil prices to Chicago Import's cost of goods sold.

American States did not attach Reed's expert report in support of its post-trial motion, but submitted his report as part of its earlier cross-motion for summary judgment. *See* [326]; [325-22]. Reed discloses his opinion that "[t]he cost of goods sold amounts and costs of goods sold percentages reported on the Federal Income Tax Returns for 2006 and 2007 *are not supported by Import's financial records*." [326] at 5 (emphasis added); *see also* [326] at 11. But there is nothing in his report stating that Chinese currency or oil prices undermined Chicago Import's cost of goods. In fact, Reed's expert report does not reference Chinese currency or oil prices, even in any of the schedules attached to his report. In the list of documents considered by Reed, there is no entry for any document relating to Chinese currency or oil prices, nor any of the websites which were later relied upon by American States in its motion for judicial notice. [326] at 17. It was not error to exclude his testimony on Chinese currency and oil prices as undisclosed opinion. And in any event, this one piece of a broader explanation for why Chicago Import's loss estimate should not be credited was of no consequence to the outcome. Reed provided the jury with loss estimates and reasons for rejecting Chicago Import's, and Chicago Import did not belabor Chinese currency exchange rates or oil prices

when proffering its theory of the case. American States cross-examined Punjabi on Chinese currency exchange rates and oil prices, but it did not attempt to confront him with specific evidence to impeach his earlier testimony. [423-11] at 40–42. The evidence was immaterial.

### 3. *Barring Evidence of Other Fires and Insurance Claims*

Chicago Import moved in limine to bar American states from introducing evidence of other fires and insurance claims at trial. [363]. American States opposed the motion, seeking to introduce evidence under Federal Rule of Evidence 404(b)(2) about other fire and insurance claims filed by Chicago Import and its president, Punjabi. American States had argued that this evidence would show motive, by establishing Punjabi's familiarity with the benefits of filing fire and insurance claims. [381] at 4–12. At the pretrial conference, the motion in limine was granted because American States presented no evidence to establish there was something suspicious about the prior fires or claims, or that there was something specific about the claims that would motivate Chicago Import to pursue an improper claim in the future. General familiarity with insurance claims was a weak and overbroad theory to show motive, and the miniscule value of this evidence was substantially outweighed by the unfair prejudice that could potentially result from a jury drawing an improper propensity or general bad character inference. That potential prejudice was too great to be cured by an instruction to the jury. The motion in limine was granted with the caveat, however, that if specific instances of prior fires and claims became relevant for impeachment purposes, those issues could be addressed during the trial.

American States argues that the motion in limine was improperly granted, contending that prior fires and insurance claims show motive and lack of accident, not propensity, and would not have prejudiced Chicago Import. But American States provided little detail about the previous fires and insurance claims, only vague references to previous incidents with "suspicious origins" (one of which dated back to 1992), and never offered any specific evidence to indicate that the prior fires and insurance claims were suspicious in nature, were so numerous or frequent as to arouse suspicion, or followed some particular pattern (such as a clear signature that Chicago Import was responsible for incendiary fires that were falsely blamed as electrical).

As noted at the pretrial conference, American States's failure to offer specific evidence tying the insured to suspicious fires distinguishes this case from other cases admitting evidence of prior fires or insurance claims. For example, in *Westfield Insurance Co. v. Harris*, 134 F.3d 608 (4th Cir. 1998), the insured had at least seven prior insurance claims for house fires, many of which shared similar and suspicious fact patterns (e.g., no one was at home, the houses were missing normal contents like food or furniture, accelerant had been used, and the insured was seen driving away from the scene minutes before the fire). *Id.* at 614–15. Similarly, in *Shaba v. Allstate Indemnity Co.*, No. CIV. 13-10690, 2014 WL 584896 (E.D. Mich. Feb. 14, 2014), within a period of five years, the insured's brother had been involved in five prior fire insurance claims at family-owned rental properties, and in each instance, the fire occurred in close proximity to tenant eviction. Even under these

facts, the insurer was required to make an offer of proof for each prior fire before such evidence would be offered to the jury. *Id.* at *2–3. When given the opportunity at the pretrial conference to make such an offer of proof, American States failed to do so, other than vaguely arguing that the fires and other claims were "suspicious."

The other cases cited by American States involved factually distinguishable circumstances, where the insurer offered specific evidence of striking similarities or suspicious circumstances (such as a number of fires within a short time period), or where the insured had willfully concealed evidence of prior fires.[4] *See, e.g., Hammann v. Hartford Accident & Indem. Co.*, 620 F.2d 588, 589 (6th Cir. 1980) (insured willfully concealed prior property fires from insurer); *Wagschal v. Sea Ins. Co.*, 861 F.Supp. 263, 264 (S.D.N.Y. 1994) (prior fires were incendiary and were started in a similar manner to the fire at issue); *Johnson v. Truck Ins. Exch.*, 285 Ark. 470, 473–75 (1985) (insured experienced four major fires over a five-year span—including two fires destroying businesses owned by him or his wife—and there was some evidence that at least one of the prior fires had been deliberately set).

In another case cited by American States, *Mathis v. Allstate Ins. Co.*, 959 F.2d 235 (Table), 1992 WL 70192, at *3 (6th Cir. 1992), the insured's prior fire, theft, and workers' compensation claims were concealed from the insurer and were admitted as impeachment evidence. Similarly, American States was specifically

---

[4] Punjabi disclosed the prior fires and claims to American States in his examination under oath during American States's investigation of his claim.

allowed to revisit the issue of prior fire and insurance claims if such evidence became relevant to impeachment during trial. American States did not do so and cannot now be heard to complain on that basis.

American States also argues that it was prejudiced by not being allowed to cross-examine Punjabi on the prior fires and insurance claims to rebut "character" evidence elicited (without objection) on his direct examination. But the testimony that Punjabi had a family and built the business up over time did not open the door to the topic of prior fires or insurance claims. American States did not offer specific evidence to connect the prior fires to a motive to set this one and never articulated a proper basis—one that did not imply that Punjabi had a propensity to commit arson or insurance fraud—to impeach Punjabi with the prior fires.

### 4. *Evidence of Criminal Charges*

Before trial, American States filed a motion in limine seeking to bar evidence that Punjabi was not charged with or convicted of a crime in connection with the warehouse fire. [373] at 34–37. Chicago Import did not object, and the motion was granted. During trial, American States called ATF Agent Gamboa to testify regarding his investigation and report, asking his opinion on who and what caused the fire. Reading from his report, Gamboa responded that the fire was "caused by unknown individuals(s) igniting either a flammable/combustible liquid and/or available class 'A' combustibles with an open flame source." [423-14] at 41–42. On cross-examination, Chicago Import elicited that Gamboa had never determined the identity of the individual who may have started the fire. [423-14] at 62–63.

American States now argues that this line of cross-examination should have been precluded by the motion in limine. The testimony that unknown individuals started the fire but that ATF did not know who was responsible could arguably imply that Punjabi was not charged, but Chicago Import used the evidence for a slightly different purpose—to point out the weakness in American States's assertion that Punjabi started the fire—without going so far as to suggest that Punjabi was innocent because he was not charged with a crime. The distinction between Gamboa's conclusions and formal criminal charges may be a subtle one, but the motion in limine ruling addressed only the latter. In addition, American States did not object during Gamboa's cross-examination or Chicago Import's closing arguments. By not raising this issue to the court's attention during trial, American States has waived its right to later complain that the testimony was inadmissible or that it violated the order in limine. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 610 (7th Cir. 2006) ("When a defendant does not object to the admission of evidence during the trial, the objection is waived and cannot be raised for the first time in a motion for new trial or on appeal."). There was no error on this point.

### 5. *Barring Testimony from Rajesh Prajapati*

Chicago Import moved in limine to preclude evidence of pre-loss neglect as a bar to insurance coverage (pursuant to the grant of summary judgment on this defense). [367]. The motion was granted with the caveat that evidence about whether the sprinkler system was turned on or off was admissible because it went to the issue of whether the fire was intentionally set. During trial, American States cross-examined Chicago Import's employee, Rajesh Prajapati, who had knowledge of

the April 2007 sprinkler head failure. American States questioned Prajapati about other occasions when he saw water in the warehouse. Chicago Import objected pursuant to the motion in limine—indicating that American States was suggesting that Chicago Import engaged in pre-loss neglect, and the objection was sustained. [423-7] at 67–68. American States did not request a sidebar to argue the objection and instead continued to cross-examine Prajapati, after which he was excused. The following day, American States asked for clarification on whether it was barred from introducing evidence to show that merchandise in the warehouse was already damaged (by water etc.) to undermine Chicago Import's damages calculation, and the court agreed that such evidence was not precluded by the in limine order regarding pre-loss neglect. Referring to the objection during Prajapati's cross-examination, the court explained that the objection was considered in light of the motion in limine—because Chicago Import had objected on that basis—but if American States wanted to introduce evidence relating to the quality of the merchandise for damages purposes, it was allowed to do so. [418-12] at 3–5. American States then indicated, for the first time, that the intent of the objected-to questioning of Prajapati the previous day had been to show that merchandise had been damaged before the fire. [418-12] at 5.

If American States had offered that explanation at the time of the objection, the questioning may very well have been allowed.[5] But American States was able to

---

[5] Lawyers have to make a tactical decision about whether to press a judge when the lawyer thinks the judge has misapprehended the relevance of a line of questioning, and the failure

introduce evidence from other witnesses on damage to the merchandise prior to the fire. American States cross-examined Punjabi about leaks in the warehouse roof and windows and presented evidence from its public adjuster, Sandra Parker (who investigated both the sprinkler claim and the fire claim) regarding water damage that she had observed and photographed at the warehouse prior to the fire. American States also made this point during closing arguments. Regardless of Prajapati's testimony, American States was able to present evidence regarding prior water damage to the goods stored in the warehouse, so there was no prejudicial error.

### 6.  *Barring Evidence of Discovery Disputes*[6]

Chicago Import moved in limine to bar evidence of discovery disputes. [365]. American States opposed the motion, arguing that the parties' discovery disputes were relevant to its defense that Chicago Import misrepresented financial records and breached its duty to cooperate. [381] at 15–20. The motion in limine was granted because American State could establish lack of cooperation or misrepresentations through other, more concrete evidence that would not require extensive mini-trials involving irrelevant issues likely to confuse the jury. American States repeats its earlier arguments, but does not address the court's holding that

---

to ask for a sidebar or clarification in the moment can lead to a lost opportunity—which is what happened here.

[6] The header in American States's opening brief states "The Court Erred in Admitting Evidence of Discovery Disputes," [418] at 26, but this is likely a typo.

the limited potential relevance was substantially outweighed by the distraction and confusion resulting from presenting discovery disputes to the jury.

American States asserts that it was unable to properly rebut evidence and argument introduced by Chicago Import to the effect that it had submitted all required documentation to American States. As the court noted during a sidebar when American States questioned whether Punjabi's testimony violated the in limine order, Chicago Import, carefully limited its questioning to whether Chicago Import provided documents to American States *prior* to the litigation. *See, e.g.,* [423-10] at 40–45, 51–52, 65, 89. Later discovery disputes between the parties would not have been relevant to whether Chicago Import cooperated with American States and provided documentation of its loss *prior* to the litigation. For example, American States asserts that it improperly was barred from asking Punjabi why he did not produce an IRS audit letter during discovery. *See* [418-13] at 34–36. Pursuant to the motion in limine, American States was barred from asking such questions in the context of discovery disputes, but it was not barred, however, from cross-examining Punjabi about the audit itself or issues about the audit that bore on Punjabi's credibility. [418-13] at 36.

American States also argues that it was prejudiced because it could not introduce evidence of discovery disputes in order to rebut Chicago Import's references to the nine-year delay between the fire and the trial, references made during Chicago Import's opening and closing arguments. *See* [418-8] at 17; [418-10] at 16. American States, however, never objected to these references at the time they

were made, and so that argument is waived. *See Venson v. Altamirano*, 749 F.3d 641, 657 (7th Cir. 2014) (objection to reference in closing argument waived where opposing party failed to object at the time). Rehashing discovery disputes in front of the jury would have been inefficient and confusing, especially when the discovery disputes between the parties were of marginal relevance to the merits of this case. There was no error.

American States has not shown that the verdict was against the clear weight of the evidence or that the trial was unfair to it, *see Whitehead*, 680 F.3d at 927, and therefore its motion for a new trial is denied.

### B.     Motion for Judgment as a Matter of Law

In the alternative to a new trial, American States seeks judgment as a matter of law in its favor. American States offers two main arguments for vacating the jury verdict and entering judgment as a matter of law: (1) Chicago Import made misrepresentations in its proof of loss, which entirely bar its recovery under the policy, and (2) Chicago Import failed to segregate its damages.

On a motion for judgment as a matter of law under Rule 50,[7] "the question is not whether the jury believed the right people, but only whether it was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict." *Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 924 (7th Cir. 2000). A court must determine whether the evidence presented at trial, when

---

[7] American States only cites to Rule 59, but Rule 50 governs motions for judgment as a matter of law.

viewed in the light most favorable to the non-moving party, is sufficient to support the verdict. *Id.* A "mere scintilla" of evidence is not sufficient to sustain a verdict, *id.*, but judges are not to substitute their view of the contested evidence in place of the jury's determination. *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004). In other words, the test is whether "no rational juror could have found for the prevailing party." *Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002).

American States argues that Chicago Import misrepresented that it paid tax, duty, and freight on the warehouse merchandise and misrepresented that it paid $1.00 each for adult videos when it actually paid less than $0.50 per video. While American States moved for a directed verdict on the grounds that Chicago Import misrepresented how much it paid for adult videos, it did not argue for a directed verdict on the basis that Chicago Import misrepresented its payments for tax, duty, and freight. [423-11] at 74–76. Instead, it argued that the tax, duty, and freight issue went to Chicago Import's failure to provide the jury with a rational basis from which to conclude damages. Because American States never moved for a directed verdict on the basis that Chicago Import misrepresented tax, duty, and freight payments, it cannot seek post-verdict judgment as a matter of law on that basis. *See Thompson v. Mem'l Hosp. of Carbondale*, 625 F.3d 394, 407 (7th Cir. 2010) ("Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion.").

Regarding the purported misrepresentations over the cost of adult videos, the motion for judgment as a matter of law is denied for the same reason that the

motion for directed verdict was denied at trial—there were substantial questions of fact over whether Chicago Import intentionally misrepresented a material fact based on an invoice stating that it paid $1.00 per video. There was evidence from which the jury could have reasonably concluded that Punjabi never intended to misrepresent the value of the videos, that Punjabi brought the discrepancy to American States's attention, and that any misrepresentation was not material. For example, Punjabi testified that he had told Garvin, American States' salvager, that he paid less than $1.00 for certain adult videos, and an exhibit showed that Garvin had memorialized that conversation in a memo to American States's lawyers. The jury could have also reasonably concluded that even if there was a discrepancy of $50,000 (based on the number of videos), that was less than 1% than the total claim and therefore not a material misrepresentation.

American States also moves for judgment as a matter of law on the basis that Chicago Import had failed to give the jury a rational basis from which to compute damages because it did not identify which goods were subject to overseas duties and which goods were not. However, there was evidence in the record from which the jury could reasonably conclude that Chicago Import's damages were $5 million (the policy limit) or more. In addition to Chicago Import's public adjuster, who valued the lost merchandise as over $6 million (not including tax, duty, and freight), American States's salvager also valued the lost merchandise at about $5 million, not including tax, duty, or freight, and at about $5.8 million including an estimate of freight and duty. [423-9] at 72–74.

American States has not shown that no rational jury could have found in favor of Chicago Import for $5 million, *see Turner*, 301 F.3d at 602, and therefore its motion for judgment as a matter of law is denied.

### C.     Remittitur

In the alternative to a new trial or judgment as a matter of law, American States seeks remittitur, contending that the jury's award of $5 million was improperly based on speculation. In considering a motion for remittitur, the jury's verdict must be given "proper deference." *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 566 (7th Cir. 2006). A court considers the following factors: "whether (1) the award is monstrously excessive; (2) there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas; and (3) whether the award is roughly comparable to awards made in similar cases." *Adams v. City of Chicago*, 798 F.3d 539, 543 (7th Cir. 2015). Although American States encourages the court to choose Reed's estimate of a $1.5 million loss over the jury's $5 million verdict, remittitur is not appropriate in this case. American States's own salvager estimated that Chicago Import's loss was in excess of $5 million. The award is not excessive and is rationally tied to the evidence. American States's motion for remittitur is denied.

## IV.    Conclusion

Plaintiff's motion to alter or amend the judgment, [413], is denied. Defendant's motion for judgment as a matter of law, a new trial, or remittitur, [417], is denied. Terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: 8/16/2016